206 So.2d 19 (1968)
Robert N. WHITE, Appellant,
v.
SARASOTA COUNTY PUBLIC HOSPITAL BOARD, Appellee.
No. 67-98.
District Court of Appeal of Florida. Second District.
January 17, 1968.
Rehearing Denied February 2, 1968.
Leon H. Brush, of the Law Offices of Granville H. Crabtree, Jr., Sarasota, for appellant.
David S. Yost, of Paderewski, Cramer, Robinson, Ginsburg & Ross, Sarasota, for appellee.
PIERCE, Judge.
This case is an appeal by Robert N. White, plaintiff in the Court below, from an order and final judgment of dismissal of plaintiff's amended complaint.
Plaintiff filed suit in the Sarasota County Circuit Court against Sarasota County Public Hospital Board and two medical doctors, M.A. DiCosola and John M. Butcher. The complaint alleged that the Hospital Board (hereinafter referred to as the Hospital) owned and operated the Memorial Hospital in Sarasota County, wherein plaintiff was admitted in February, 1962, for treatment of a broken right arm; that he employed defendant DiCosola, an orthopedic surgeon, who operated on the arm on March 9, 1962, and in connection therewith prescribed for plaintiff "a transfusion of one unit (one pint) of whole blood which was administered by * * * Dr. DiCosola"; that the blood so transfused "was contaminated with a hepatitis virus", in consequence whereof plaintiff contracted "homologus serus hepatitis"; that the transfused blood had been purchased by the Hospital from a blood bank but the cost had been passed on by the Hospital to the plaintiff together with a service charge for "furnishing the equipment and labor", which arrangement allegedly constituted "a sale of said blood by the hospital to plaintiff"; that Dr. Butcher prescribed an improper course of treatment for said condition; and that because of the contamination of the blood and improper treatment thereafter, plaintiff suffered physical and mental injury, for which judgment was demanded.
Defendants DiCosola and Butcher filed answers to the amended complaint, but the Hospital moved to dismiss, which motion the Court granted. Final judgment was then entered in behalf of the Hospital and the amended complaint dismissed with prejudice.
*20 Plaintiff has appealed to this Court from the last mentioned order. Plaintiff and the Hospital are the only parties to this appeal, defendants DiCosola and Butcher not having been joined.
While the amended complaint based its case against the two doctors solely upon their alleged negligence in carrying out their functions in connection with the operation upon plaintiff, the case against the Hospital was not so grounded.
The cause of action against the Hospital was predicated upon a sale and a breach of implied warranty. Specifically, it was contended that (1) the utilization of the blood, which the Hospital had bought from a blood bank and which had been thence transfused into the body of plaintiff, constituted a sale, rather than a service, from the Hospital to the plaintiff, and (2) such transaction being a sale, an implied warranty existed that the blood was wholesome and reasonably fitted for the use intended, which warranty was breached by the Hospital when plaintiff contracted hepatitis because the blood was contaminated with a hepatitis virus. The trial Court ruled adversely to plaintiff. We agree with the trial Court and affirm.
Determination of this appeal is ruled by the opinions in Russell v. Community Blood Bank, Inc., Fla.App. 1966, 185 So.2d 749; Community Blood Bank, Inc. v. Russell, Fla. 1967, 196 So.2d 115; and Hoder v. Sayet, Fla.App. 1967, 196 So.2d 205. The first two opinions were in the same case, the first in 185 So.2d being by this 2nd District Court from the Pinellas County Circuit Court, and the second being by the Supreme Court upon certiorari from this Court's opinion. The Hoder v. Sayet case is by the 3rd District Court.
The facts in the two cases were almost identical with each other and with the case sub judice. Each case involved transfusion into a hospital patient of whole blood contaminated with a hepatitis virus, causing injury to the patient, and in the Hoder case in death. In the Russell case, plaintiff Mae O. Russell had received such a blood transfusion at Mound Park Hospital in St. Petersburg, which blood had been procured by the Hospital from Community Blood Bank, Inc., and hence transmitted to plaintiff, causing her serious injury because of hepatitis serum contamination. Plaintiff Russell elected to sue the blood bank alone, and premised her case upon the theory there had been a "sale" of the blood from the blood bank to plaintiff notwithstanding it went through the hospital channels, and that because it was contaminated when so sold and transfused there was "a breach of the implied warranties of merchantability and fitness for the use intended", from which a cause of action arose against the blood bank for injuries she in consequence incurred. The trial Judge dismissed her complaint as not stating a cause of action, because the transfer of blood under such circumstances "is a service, not a sale and that an implied warranty is not applicable to the `sale' of blood".
Upon appeal from the order of dismissal, this Court disagreed with the trial Judge and held that the transfer of the blood to plaintiff from the blood bank was a sale and not a service and also held that such "sale" carried with it an implied warranty of fitness and merchantability. Upon certiorari the Supreme Court revised this Court's opinion upon a minor collateral point, but fully agreed with this Court as to a "sale" of the blood and an implied warranty of merchantability and fitness, for the breach of which the blood bank would be liable.
This Court in its original opinion of reversal reviewed copious authorities from other jurisdictions dealing with liability of both blood banks and also hospitals for transfusion of contaminated blood. In discussing and reviewing such cases, and in applying the rationale thereof to the Russell case, this Court drew a sharp line of demarcation between the liability of a hospital on the one hand, and a blood bank on the other, as to liability to the injured patient. Following the lead of Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 *21 (1954), this Court held that a hospital, under the facts in Russell, could not be liable to the patient, stating that the "courts are unanimous in holding that a transfer of blood by a hospital to a patient is not a sale but a service", but that the blood bank was liable. It follows, of course, that if there was no sale of blood from the hospital to the patient, but only a service rendered, there could be no implied warranty of fitness or merchantability, and therefore no breach giving rise to a cause of action.
This Court in Russell referred to the Perlmutter case as "the leading case on the subject of implied warranty in the sale of blood" and quoted extensively from that case, following which this Court then said: (185 So.2d text 751)
"This [Perlmutter] case has been expressly followed in other jurisdictions in which suit for breach of implied warranty in the sale of blood was brought against a hospital, Sloneker v. St. Joseph's Hospital, 233 F. Supp. 105 (D.Colo. 1964) Gile v. Kennewick Public Hospital Dist., 48 Wash.2d 774, 296 P.2d 662, 59 A.L.R. 2d 761 (1956); Koenig v. Milwaukee Blood Center, Inc., 23 Wis.2d 324, 127 N.W.2d 50 (1964); Dibblee v. Dr. W.H. Groves Latter-Day Saints Hospital, 12 Utah 2d 241, 364 P.2d 1085 (1961). These courts are unanimous in holding that a transfer of blood by a hospital to a patient is not a sale but a service. * * *
"We believe there is a distinction between a suit against a blood bank as opposed to a hospital, despite authority to the contrary. * * * Regardless of the fact that a hospital supplying whole blood to a patient may be merely performing a service incident to the over-all medical attention being furnished, we are not willing to extend this `service' characterization to the blood bank which originally collects and distributes the commodity." (Emphasis in text)
Concededly the liability of Mound Park Hospital was not directly involved in Russell because the hospital was not a party to the suit. But the non-liability of a hospital under such circumstances, as established by a long array of cited cases from other jurisdictions, was used as a basis for the holding that the blood bank, as contrasted by the hospital, was potentially liable because the "sale" was between the blood bank and the patient, and not between the hospital and the patient. But even if such language be considered as technically dicta, it was strong dicta, and the rationale thereof is herewith adopted and approved by this Court in the case sub judice.
In the Hoder case, the 3rd District Court had before it a case wherein both the hospital and the blood bank were sued jointly. In that case recovery was sought against both defendants "on theories of implied warranty and negligence". On the question of implied warranty, the 3rd District Court agreed with this Court's opinion in Russell, commenting that 
"Judge Shannon, in Russell v. Community Blood Bank, Inc., Fla.App. 1966, 185 So.2d 749, has given this question a scholarly and thorough discussion, and has noted that the transfer of blood by a hospital to a patient is generally considered a `service' as opposed to a `sale,' and that the allegation of a breach of an implied warranty would not state a cause of action against the hospital. The opinion held, however, that a blood bank which supplied blood to a patient for a consideration has made a `sale' and that there may be a cause of action stated against it for breach of an implied warranty. We concur." (Italics in text).
The Court in Hoder analyzed the allegations of the plaintiff's complaint there involved and held that implied warranty existed against the blood bank but not the hospital, because the sale of the blood to the patient was not by the hospital but by the blood bank. The opinion in Hoder thereupon resumed:
"Having determined that a cause of action for breach of implied warranty was *22 stated against the blood bank, but not the hospital, and that the blood bank had failed to carry the burden of proving conclusively the non-existence of a material issue of fact so as to be entitled to a summary judgment, we now turn to the question of possible negligence on the part of either the hospital or blood bank."
Hoder then held that the allegations of the complaint there involved sufficiently charged negligence against both the blood bank and the hospital, finally summarizing as follows:
"Accordingly, we concur with the view of the trial judge that there was no issue made by the pleadings of any liability on the part of the hospital for a breach of implied warranty. See Rule 1.36(d) Florida Rules of Civil Procedure, 30 F.S.A.
"We reverse and remand, for further proceedings consistent herewith, on the issues of negligence against both the hospital and the blood bank, as well as on the issue of a breach of an implied warranty by the commercial blood bank."
In the Hoder case, therefore, the 3rd District Court held the blood bank, but not the hospital, liable "for a breach of implied warranty" but that both the blood bank and the hospital could be liable for negligence.
We emphasize, however, that in the instant case the amended complaint against the Hospital was grounded solely upon the theory of breach of implied warranty in the sale of blood by the Hospital to the patient, and not upon any theory of negligence. Both the Russell case by this Court and the Hoder case by the 3rd District Court constitute direct authority contrary to the contention of plaintiff in the instant case.
We deem it unnecessary here to review the many cases from other jurisdictions touching upon the liability of a hospital under the circumstances involved, as they have been extensively discussed and analyzed in the Russell and Hoder opinions, supra, resulting in the conclusions there drawn, which we here follow.
Accordingly, the final judgment appealed from herein is 
Affirmed.
LILES, C.J., and HOBSON, J., concur.