**Kay McDANIEL, Plaintiff-Appellant,**

v.

**BAPTIST MEMORIAL HOSPITAL,**
**Defendant-Appellee.**

**No. 72-1094.**

United States Court of Appeals,
Sixth Circuit.

Oct. 26, 1972.

---

7. *See* the opinion of the Tax Court, 55 T.C. at 457, and cases cited therein.

Hal Gerber, Memphis, Tenn., for plaintiff-appellant; Gerber & Gerber, Memphis, Tenn., Robert B. Branch, Branch, Adair & Thompson, Paragould, Ark., on brief.

Gavin M. Gentry, Memphis, Tenn., for defendant-appellee; Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., on brief.

Before CELEBREZZE and PECK, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Plaintiff-appellant, Kay McDaniel, widow of William Thomas McDaniel, brought suit against defendant Baptist Memorial Hospital for the alleged wrongful death of her husband, William Thomas McDaniel. It was charged in the complaint that William McDaniel died on February 5, 1970, from serum hepatitis as a consequence of blood transfusions given him on November 25, 1969, while a patient in the Baptist Memorial Hospital in Memphis, Tennessee. The complaint averred in several paragraphs as follows:

"2. Plaintiff avers that on November 25, 1969, prior thereto and subsequent thereto, the defendant owned, operated, managed, maintained and controlled a certain hospital located in Memphis, Tennessee, wherein it provided, supplied and leased rooms, *sold and supplied drugs, blood,* medical devices and provided trained, skilled personnel for the needs of patients during their care and treatment in said hospital, for all of which it charged fees; that in connection with this operation, it also maintained a blood bank, from which *it sold and supplied* whole blood to patients in the hospital, including the deceased, William Thomas McDaniel.

"3. On or about November 25, 1969, the defendant accepted William Thomas McDaniel, husband of this plaintiff, as a patient and agreed to render to him competent and adequate medical and hospital services and supplies.

"4. The defendant, in the rendition of such medical and hospital services and supplies, did *supply, sell and transfuse* William Thomas McDaniel on November 25, 1969, with approximately 12 pints of blood from its blood bank.

"5. The defendant, in obtaining, supplying, selling and transfusing said blood, had a duty to said patient to obtain, supply and transfuse such blood so that it was not defective, impure, did not contain deleterious contaminants, and would not be unreasonably dangerous when put to the use for which it was obtained, supplied, sold and transfused.

"6. Such blood as was obtained, *supplied, sold* and transfused by the de-

fendant to the decedent, William Thomas McDaniel, was defective, impure and contained deleterious contaminants, and was in an unreasonably dangerous condition at the time of the supplying, sale and transfusing of said decedent; that this blood was expected to and did reach the deceased without substantial change in the condition in which it was sold and supplied; that as a direct and proximate result of its use, the said William Thomas McDaniel was caused to and did contract, serum hepatitis as a result of which, the said William Thomas McDaniel died on February 5, 1970; *that therefore, the defendant is strictly liable in tort to plaintiff by reason of the facts hereinabove alleged.*" (Emphasis supplied.)

Notwithstanding the foregoing allegations, the complaint did not charge, nor does appellant's address to us charge, the hospital with negligence or any breach of duty, but relied entirely upon its position that "the defendant [hospital] is *strictly* liable *in tort* to plaintiff by reason of the facts hereinabove alleged." Plaintiff's total reliance is and was upon the foregoing charge of strict liability in tort, and we are not here required to consider whether a cause of action for negligence might be asserted in this case.

The District Judge granted defendant's motion to dismiss for failure of the complaint to state a cause of action.

We affirm.

In granting defendant's motion, the District Judge relied in part upon Tennessee Code Annotated, Section 47–2–316(5), which provides:

"47–2–316. *Exclusion or modification of warranties.*

\*　　\*　　\*⸴　　\*　　\*　　\*

(5) The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues (such as corneas, bones, or organs), whole blood, plasma, blood products, or blood derivatives. Such human tissues, whole blood, plasma, blood products, or blood derivatives shall not be considered commodities subject to sale or barter, and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service. [Acts 1963, ch. 81, § 1(2–316); 1967, ch. 206, § 1.]"

The issues on the appeal before us are stated in appellant's brief as follows:

"1. Is strict liability in tort applicable against a hospital in a case of wrongful death alleged to have been caused by serum hepatitis due to transfusion of contaminated blood even though Tennessee has a statute, Section 47–2–316, T.C.A., which exempts hospitals from liability for breach of implied warranty under the state's Uniform Commercial Code?

"2. Is the statute, Section 47–2–316, T.C.A., unconstitutional?"

The brief further says that appellant relies upon Section 402A of Restatement of Torts, and that,

"We rely upon Cunningham v. MacNeal Memorial Hospital [47 Ill.2d 443], 266 N.E.2d·897 (Ill.1970), Jackson v. Muhlenberg Hospital [96 N.J. Super. 314], 232 A.2d 879 (N.J.1967) and Hoffman v. Misericordia Hospital of Phila. [439 Pa. 501], 267 A.2d 867 (Pa.1970)."

Both the *Cunningham* and *Jackson* cases rely upon the fact that the supplying of blood constitutes a sale and in so doing the court in *Cunningham* was able to employ Section 402A of the Restatement of Law to attach liability to the hospital. However, the Court in *Jackson* specifically held,

"The unavoidable presence of hepatitis virus in blood furnished does not give rise to strict liability for the resultant harm." 232 A.2d at 890.

The Court did remand in *Jackson* for a jury trial on the basis of negligence and also on the theory of breach of an expressed warranty contained on the bottles of blood furnished by the commercial blood bank which stated that the blood was procured by using the "utmost of care in the selection of donors."

In the last case relied upon by appellant, *Hoffman, supra,* 267 A.2d 867, the Court did not decide the question of whether the furnishing of blood constitutes a sale or a service. The case was remanded for a jury trial based on the theory that the transfer of blood gave rise to an implied warranty, but the Court, as was the case in *Cunningham* and *Jackson,* did not have to overcome a statute such as the Tennessee one we have before us. Factually these cases lend little support to the plaintiff's position.

Restatement of the Law considers the matter of strict liability under "Topic 5, Strict Liability," and then goes on to say in Section 402A:

> *"Special Liability of Seller of Product for Physical Harm to User or Consumer.*
>
> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> "(2) The rule stated in Subsection
>
> (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and

> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

From the foregoing, it appears that Restatement, § 402A, imposes "Strict Liability" or "Liability Without Fault" only upon "One who *sells* any product in a defective condition"; and it is clear that Tennessee in passing its above-quoted statute, did so deliberately to protect hospitals from "liability without fault." The District Judge's opinion states that the intention of such statute was to "exempt entities such as the defendant Hospital from strict liability in regard to transfusion of blood, blood products, plasma, and other human tissues."

Apart from legislative enactment that a hospital's transfusing blood into a patient is not a sale, a much cited case came to the same conclusion unaided by statutory pronouncement. In the case of Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 (1954), the plaintiff did not rely on negligence, but sought recovery upon a theory that supplying blood by transfusion constituted a sale with the implied warranty that the blood was reasonably fit for the purpose of its intended use. The Court of Appeals of New York by divided holding said:

> "In this case, it is plain that what the complaint alleges and truly describes is not a purchase and sale of a given quantity of blood, but a furnishing of blood to plaintiff for transfusion at a stated sum, as part of, and incidental to, her medical treatment." 123 N.E.2d at 796.

There being neither a sale nor a charge of negligence, it was held that the complaint failed to state a cause of action.

A leading case, contrary to *Perlmutter, supra,* is the one in which plaintiff places chief reliance, Cunningham v.

MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897, 45 A.L.R.3d 1353 (1970). There the Illinois Supreme Court held that the furnishing of blood by transfusion was a sale with an accompanying warranty, which was breached when a patient, as here, developed serum hepatitis.

No case has been cited to us where "strict liability in tort" has been imposed where the element of a sale is not involved. The District Judge here relied on the Tennessee statute declaring that the transfusion of blood is not a sale. Appellant charges that the relevant statute is unconstitutional.

■ Unless we are, without precedent, ready to make an advance in the doctrine of liability without fault, or declare the Tennessee statute unconstitutional, we must affirm. No doubt the Tennessee Legislature, as were numerous other states, moved to seek to protect its hospitals against liability without fault, because as said in Merck & Co. v. Kidd, 242 F.2d 592 (1957),

"Despite every effort to screen the donors, it is recognized that the possibility that the hepatitis virus may be present in dried plasma cannot be completely obviated. Moreover, if the virus is present, it cannot be discovered by microscopic examination or by any other test known to medical science." 242 F.2d at 594.

Because of this situation, many states adopted statutes of the same general tenor as that of Tennessee. The appellee cites some forty-one states which have adopted such statute. The Illinois statute was adopted in 1971, shortly after the Supreme Court of Illinois in Cunningham v. MacNeal Memorial Hospital, *supra,* 266 N.E.2d 897 (1970), had held that a blood transfusion was a sale subjecting hospitals to liability without fault. In its declaration of policy, the Illinois Legislature said:

"The availability of scientific knowledge, skills and materials for the pur-
pose of injecting, transfusing or transplanting human whole blood, plasma, blood products, blood derivatives and products, corneas, bones, or organs or other human tissue is important to the health and welfare of the people of this State. *The imposition of legal liability without fault* upon the persons and organizations engaged in such scientific procedures inhibits the exercise of sound medical judgment and restricts the availability of important scientific knowledge, skills and materials. It is therefore the public policy of this State to promote the health and welfare of the people by limiting the legal liability arising out of such scientific procedures to instances of negligence or willful misconduct." Quoted from Illinois Statutes, Title 91, § 181. (Emphasis supplied.)

To like effect is a statute of Nebraska, dealing with blood transfusions:

"The imposition of legal liability without fault upon the persons and organizations engaged in such scientific procedures inhibits the exercise of sound medical judgment and restricts the availability of important scientific knowledge, skills and materials. It is therefore the public policy of this state to promote the health and welfare of the people by limiting the legal liability arising out of such scientific procedures to the instances of negligence or willful misconduct." Quoted from Revised Statutes of Nebraska, § 71–4809.

It is suggested that greater care in the selection of donors could reduce the likelihood of the presence of hepatitis virus in blood obtained for use in hospitals, and also that recently ways have been found where the presence of hepatitis can be discovered by the application of certain tests.[1] If so, failure to use known methods of discovery might indeed be charged as negligence. Such is not this case.

1. *See,* Annot., 45 A.L.R.3d 1364, 1373 n. 2 (1972).

In sustaining the constitutionality of the Tennessee statute, the District Judge said:

"The burden is, of course, upon the plaintiff here who challenges the Tennessee Statute because it assertedly offends due process and equal protection provisions. The fact that the important service of blood transfusions has been singled out for legislative treatment, and immunity to some degree is bestowed, does not, in and of itself, make it unlawful or unconstitutional. Estrin v. Moss [221 Tenn. 657], 430 S.W.2d 345 (Tenn.1968). The question is whether the classification is so arbitrary and capricious as to constitute denial of equal protection. City of Chattanooga v. Harris [223 Tenn. 51], 442 S.W.2d 602 (Tenn.1969). Legislative acts are entitled to great weight and courts 'favor the constitutionality of statutes'. 16 C.J.S., Const. Law, Sec. 98a. See Dykes v. Hamilton County, 183 Tenn. 71, 191 S.W.2d 155 (1945); Holly v. Elizabethton, 193 Tenn. 46, 241 S.W.2d 1001 (1951); Smithson v. State of Tennessee, 222 Tenn. 499, 438 S.W.2d 61 (1969). See also Donahoo v. Mason & Dixon Lines, 199 Tenn. 145, 285 S.W.2d 125 (1955).

"The law in question involves all within the class of selling or distributing blood or plasma equally and treats this activity as a medical service. There appears to be no discrimination in the law favoring the Hospital per se, because it is a hospital rendering important services. We will, therefore, recognize the provisions of T.C.A. 47–2–316 in question as being a constitutional exercise of authority for the public welfare by the Tennessee legislature."

We have been cited no case, state or federal, whereby a statute such as the one in question has been declared unconstitutional. The fact that some forty-one states have adopted similar legislation lends weight to the presumption of constitutionality.

Judgment affirmed.