Sharon **JOHNSON**, Plaintiff,

v.

**SEARS, ROEBUCK & CO.**, a foreign corporation, Defendant and Third Party Plaintiff,

v.

**COLUMBIA HOSPITAL** et al., Third Party Defendants.

Civ. A. No. 70–C–716.

United States District Court,
E. D. Wisconsin.

April 4, 1973.

Kenneth M. Kenney, Milwaukee, Wis., for plaintiff.

Howard A. Dall, Milwaukee, Wis., for defendant and third party plaintiff.

Richard J. Palmersheim, Milwaukee, Wis., for third party defendant Columbia Hospital.

John H. Ames, Milwaukee, Wis., for third party defendant St. Joseph's Community Hospital.

J. Robert Kaftan, Green Bay, Wis., for third party defendant Charles Ries.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

The plaintiff in this action, Sharon Johnson, was seriously injured when a tire fell off the automobile she was driving. She alleges that the tire was improperly installed by one of the agents or employees of the defendant Sears, Roebuck & Co. ("Sears"). Sears has impleaded third-party defendants Charles Ries, d/b/a Ries Citgo Station, a/k/a Ries' Service Station, and St. Joseph's Community and Columbia Hospitals. The action is before me now on the defendant hospitals' motions to dismiss the second causes of action against them.

 Sears bases the hospitals' liability on two theories. The first cause of action against each hospital alleges that they were negligent. The second cause of action alleges that they are strictly liable in tort. The defendants claim that strict liability does not attach to their services. Wisconsin law applies.

The Wisconsin Supreme Court adopted the concept of strict tort liability in Dippel v. Sciano, 37 Wis.2d 443, 155 N.W.2d 55 (1967). In *Dippel* liability was imposed for the sale of a defective product. No case has been cited to me, however, and I have found none in which the Wisconsin Supreme Court has addressed itself specifically to the applicability of strict liability to the sale of services. Therefore, I must attempt to decide the matter as the Wisconsin Supreme Court would if the issue were before it. Wright, Law of Federal Courts, 239–40 (2d ed. 1970).

The majority of relevant cases have dealt with the standard to which blood suppliers will be held when a patient contracts serum hepatitis from a transfusion. See, e. g., Dibblee v. Dr. W. H. Groves Latter-Day Saints Hospital, 12 Utah 2d 241, 364 P.2d 1085 (1961); Gile v. Kennewick Public Hospital District, 48 Wash.2d 774, 296 P.2d 662 (1956); Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 (1954). The issue in each of these cases was whether or not the blood which was supplied to a patient was impliedly warranted as fit for its use. Each was ultimately decided by categorizing the transaction as a service as opposed to a sale, i. e., no implied warranty of fitness under relevant sales acts. The Wisconsin Supreme Court came to the same conclusion when dealing with the issue in Koenig v. Milwaukee Blood Center, Inc., 23 Wis.2d 324, 127 N.W.2d 50 (1964).

Some more recent decisions have rejected this approach. In Russell v. Community Blood Bank, Inc., 185 So.2d 749 (1966), a Florida district court of appeals departed from the "sales versus service" categorization and found that an implied warranty of fitness applied to blood supplied by the defendant unless it was factually determined that the impurities in the blood could not be detected or prevented. The Illinois Supreme Court went one step further in Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897 (1970), and held that a hospital could be held strictly liable in tort for providing blood to patients which contained impurities.

Courts in New Jersey, Pennsylvania, and Michigan have also found the sales/service dichotomy untenable. In Newmark v. Gimbel's Incorporated, 54 N.J. 585, 258 A.2d 697 (1969), the New Jersey Supreme Court held a beauty operator strictly liable for injuries caused by a permanent wave application stating "the distinction between a sale and the rendition of services is a highly artificial one." 258 A.2d at 700. In Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A.2d 867 (1970), the complaint charged that the plaintiff's deceased had contracted serum hepatitis and died after receiving a transfusion while a patient at Misericordia. The trial court granted defendant's demurrer because the transaction was not a "sale." The Supreme Court of Pennsylvania reversed because it did "not feel obligated to hinge any resolution of the very important issue here raised on the technical existence of a sale." 267 A.2d at 870. The court stated further that the demurrer was improperly sustained "without sufficient inquiry as to whether the policies for which warranties are implied in law would be furthered by their implication in this situation." 267 A.2d at 871. Finally, the Michigan Court of Appeals held in Buckeye Union Fire Insurance Co. v. Detroit Edison Co., 38 Mich.App. 325, 196 N.W.2d 316, 317 (1972), that "implied warranties * * * should apply to the sale of services as well as to the sale of goods."

I feel that these later cases, while not dictating any particular result in this case, utilize the proper approach to the issue based on reason and on the *Dippel* approach. My decision should not be based on a technical or artificial distinction between sales and services. Rather, I must determine if the policies which support the imposition of strict tort liability would be furthered by its imposition in this case. In the present context, the question is whether it is in the public interest for the consumer/patient or the supplier/hospital to bear the loss incurred by defective, though non-negligent, services.

Initially, hospitals provide at least two types of services. The first consists of professional medical services and the second is made up of those mechanical and administrative services which support the first.

It is argued, since strict tort liability should not apply to professional medical services by doctors (if that is true, and I believe it is without deciding so at this

time), that it follows that strict liability should not apply to mechanical and administrative services by hospitals. I do not think this follows. Medical sciences are not exact. A patient cannot consider a doctor's treatment to be defective simply because it does not cure his ailment. All that a doctor can be expected to provide is adequate treatment commensurate with the state of medical science. In other words, doctors do not contract with patients to provide cures but rather to provide treatment in a non-negligent manner. To hold medical professionals strictly liable under these circumstances would not promote any social benefit. In fact, if that standard were applied to doctors, it might make them reluctant to assume responsibility for the treatment of patients, particularly when such treatment involves a developing area of medicine, which would work a serious social disservice.

I do not, however, feel that the mechanical and administrative services provided by hospitals should necessarily be exempt from strict liability. Several considerations lead me to this conclusion. They are: first, the serious consequences which can result when a patient receives defective hospital services; second, the near total inability of laymen to recognize or control such defective service; and, finally, since doctors already are hampered by an inexact science, it is essential that they receive all pertinent information accurately to determine if a particular course of treatment is appropriate. In short, it is in the public interest that those services which hospitals perform for both doctors and patients be performed properly.

The strongest argument for a blanket exception for hospitals from the rigorous standard of strict liability is that they are generally charitable institutions whose funds should not be depleted. One of the functions of strict liability is to allocate losses to the party best able to bear the loss or to spread it more efficiently. It is arguable, on public policy grounds, that forcing charitable institutions to bear a loss depletes their funds and deprives beneficiaries of the charity of potential services. However, I agree with the Illinois Supreme Court which stated in Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897, 904(1970):

> " * * * we do not believe in this present day and age, when the operation of eleemosynary hospitals constitutes one of the biggest businesses in this country, that hospital immunity can be justified on the protection-of-the-funds theory. * * * "

 Hospitals provide numerous services, and the distinction between professional and nonprofessional services is often vague. Therefore, the decision to impose strict liability should be made on an *ad hoc* basis. In each case the decision should be based on the facts, but a conclusion that it is in the public interest to hold a hospital strictly liable for supplying a particular defective service cannot be ruled out as a matter of law.

For the above reasons, I am denying the third-party defendants' motions to dismiss. This does not mean that these parties are strictly liable in this case. I do not have sufficient information to determine which specific services were allegedly defective when performed.