MRS. SALLIE BEECH v. DR. F. L. HUNTER.
and
B. L. BEECH v. DR. F. L. HUNTER.

Middle Section. December 12, 1931.

Petition for Certiorari denied by Supreme Court, March 5, 1932.

189 .

Routt & Myers, of Fayetteville, for plaintiff in error, Hunter.
W. B. Lamb, Jr., of Fayetteville, for defendants in error, Beech.

CROWNOVER, J.  These cases were before us on November 7th, when the judgments of the lower court were affirmed for the rea-

sons that the bill of exceptions was not signed and authenticated by the trial judge, and not dated or marked filed by the clerk. Since then a petition for a rehearing has been filed, in which a diminution of the record was suggested and the missing parts of the record supplied, hence the petition is granted, and the suits are now before us on the assignments of errors.

As stated by us in our former opinion, these two actions were for damages for injuries to Mrs. Beech while being treated by the defendant, Dr. Hunter, a chiropractor, and for loss of her services by her husband, B. L. Beech. They were tried by the court and a jury.

At the close of plaintiffs' proof and again at the conclusion of all the proof defendant moved the court for directed verdicts, which motions were by the court overruled.

The jury returned verdicts for $1000 in favor of Mrs. Beech and $750 in favor of B. L. Beech. Motions for a new trial and in arrest of judgment having been overruled, defendant has appealed in error to this court and has assigned errors in both cases.

Mrs. Beech has since died and her action has been revived in the name of her administrator.

Mrs. B. L. Beech, who was fifty-nine years of age, was suffering with pains in her back. However, she was able to go about and to do all of her housework, and to work in the fields on her husband's farm.

In the spring of 1929 two doctors at Fayetteville diagnosed her trouble as neuritis and treated her for same. She was not benefited by their treatment.

In September, 1929, she went to Dr. F. L. Hunter, a chiropractor, for treatment. As stated by Dr. Hunter during the trial, the chiropractic method of treating diseases is by manipulation of the spinal column, "adjusting the misaligned vertebrae to resume natural coordination from the spine." She told Dr. Hunter that Doctors Sloan and McCown had said her trouble was neuritis and had treated her for same but their treatment had done her no good. Dr. Hunter examined her back and spinal column and found, as he says, "an impinged nerve running out over the shoulder, causing pain through the region of the shoulders and back." He also says he found three misaligned or displaced vertebrae. Others testified that she had a knot on her spinal column. Dr. Hunter, when asked about it, did not testify that there was one, but he did not deny it, but stated that he had found the misplaced vertebrae. He gave Mrs. Beech fourteen treatments, with little effect. The treatments consisted of turning infra-red rays of light on her back, rubbing her back and adjusting the spinal column by pressure with his hands.

On October 22, 1929, she went to his office for her fifteenth treatment. On that morning she did some housework, drove eight miles in an automobile, walked about the square of the town of Fayetteville and climbed the stairs to Dr. Hunter's office for the treatment. He placed her (as was the custom) face down on a table, removed the clothing from her back, turned on the infra-red light and massaged her back. Next he pressed with both hands upon her back bone where the vertebrae were out of line, which caused her so much pain that he had to desist. He lifted her from the table and she could not stand up. It was found that she could neither stand nor walk. From that time both lower limbs were paralyzed.

Defendant's first four assignments of errors are to the effect that the court erred in not sustaining his motions for peremptory instructions, and there was no evidence to support the verdict.

Defendant's defense is, first, that he did not press upon her back at that particular treatment, only turned on the light and massaged her back; second, that he was not negligent in so pressing upon her spinal column to adjust it, as he had used due diligence and all his skill in diagnosing her case, that he had diagnosed it as neuritis and treated her in accordance with the practices of chiropractic.

On the first question, Mrs. Beech, B. L. Beech and Mrs. Raymond Beech all testified that he pressed upon her back. B. L. Beech and Mrs. Raymond Beech had accompanied Mrs. B. L. Beech and were present in the room while she was being treated. There being a conflict of evidence on this question, the matter was for the jury, and this court cannot disturb the finding of the jury.

On the question of whether he was guilty of negligence in his diagnosis and treatment of Mrs. Beech's case, several physicians testified that Mrs. Beech had Pott's disease, which, is easily recognized in its advanced stages, although it might not be discovered in its first stages; that it causes a "buckling" of the backbone, evidenced by knots, which finally causes a pressure on the spinal cord, resulting in paralysis. Dr. Hunter states that when she came to him for treatment she had three displaced vertebrae. Dr. Sheddan says that when called to see her after she was paralyzed he made an examination and found a knot on her back at about the middle vertebra and concluded that she had Pott's disease and that her paralysis was caused by pressure on· the spinal column. Dr. McCown stated that if he had discovered at the time she came to him for treatment that she had three vertebrae misplaced or out of alignment, he would not have diagnosed her trouble as neuritis, but as Pott's disease, probably.

Pott's disease is the eating away of the vertebrae, generally of tuberculous origin. Dr. Sheddan stated that the effect of Pott's disease is to destroy the body of the vertebrae, that in this disease any pressure on the spine is to be avoided.

Dr. McCown stated that in his opinion her paralyzed condition was caused by some pressure on the spinal cord due to displacement of diseased vertebrae. Dr. Cannon stated that he considered that the manipulation of her spinal column was the exciting cause of her paralysis.

Evidently the jury believed that the vertebrae of her spinal column, weakened by the disease, were displaced by the pressure of Dr. Hunter's hands, which caused pressure on the spinal cord, resulting in paralysis.

It appears from the evidence that Dr. Hunter did not bring into use the necessary knowledge, skill and science which his profession demands, and did not exercise reasonable care and diligence in the treatment of Mrs. Beech. Wood v. Clapp, 4 Sneed, 65.

"In the absence of a special contract to do so, a physician or surgeon is not required to exercise extraordinary skill and care or the highest degree of skill and care possible, nor, if not a specialist, the skill and care of the specialist or expert, but is only required to possess and exercise the degree of skill and learning ordinarily possessed and exercised, under similar circumstances, by the members of his profession in good standing, and to use ordinary and reasonable care and diligence, and his best judgment, in the application of his skill to the case." 48 C. J., 1113, sec. 101; Wood v. Clapp, 4 Sneed, 65; Alder v. Buckley, 1 Swan, 69; Young v. Dozier, 4 Tenn. App., 151.

There is material evidence that she had Pott's disease during the whole time he treated her, that her paralysis was caused by his treatment on October 22, 1929, and that his diagnosis was not correct.

The only other proposition is whether Dr. Hunter exercised the degree of skill and care ordinarily exercised by physicians of his school engaged in the same general line of practice in the same or similar localities. (48 C. J., 1117, sec. 103.) We are of the opinion that there was sufficient evidence on this proposition to carry the cases to the jury. When she first visited him he found that she had three displaced vertebrae, "bent over impinging a nerve," and he gave her fourteen or fifteen pressure treatments thereafter, without discovering that she had Pott's disease. Other doctors discovered the disease on examining her after his treatments. Taking his testimony and that of the other doctors, we are of the opinion that there is evidence to support the verdict of the jury on his lack of the required care, knowledge and skill on the subject, as hereinabove set out. Ogle v. Noe, 6 Tenn. App., 485.

It is no defense to say that Mrs. Beech had Pott's disease and would finally have become a paralytic. "The liability of one who negligently or unlawfully injures the person of another is not to be measured by the physical strength of the party injured or his capacity to endure suffering." One of weak physical structure, or little vitality, or in ill health, has as much right to protection from violence or negligence as a robust athlete, and has a right to recover for injuries sustained that are the natural consequences of the wrong proximately causing such injuries. Elrod v. Town of Franklin, 140 Tenn., 228, 204 S. W., 298; 17 C. J., 1034, 1304; 22 R. C. L., 151; Railroad v. Northington, 91 Tenn., 56, 17 S. W., 880;. Grace v. Curley, 3 Tenn. App., 1011.

Hence all the assignments on these propositions must be overruled.

Defendant's fifth assignment of error complains of the judge's charge to the jury that the doctor, by his own statement, had violated the law in failing to file a copy of his license in Lincoln County, and they could look to this fact as affecting his credibility as a witness, but it could not be looked to on the question of negligence. This was competent evidence to impeach his character as a witness. Powers v. State, 117 Tenn., 363, 379, 97 S. W., 815.

Defendant's sixth assignment is as follows:

"Because the court erred in charging the jury as follows:

" 'In determining what constitutes reasonable and ordinary care, skill and diligence, the test is that which physicians and surgeons in the same general neighborhood ordinarily have and exercised in like cases.

" 'While a physician does not guarantee the cure of his patients and is not liable for an error in diagnosis, yet in performing an operation he is employing surgery as an art and is liable for negligence.' "

The judge first charged the jury as follows:

"A physician is bound to bestow such reasonable and ordinary care, skill and diligence, as physicians and surgeons in the same (general) neighborhood in the same general line of practice ordinarily have and exercise in like cases."

This was a correct statement of the law. 21 R. C. L., 381, sec. 27; 385, sec. 30; 48 C. J., 1117, sec. 103.

He next charged:

"A physician is entitled to have his treatment tested by the school rules and principles of the school of medicine to which he belongs and not to another school. And if he performs the treatment with ordinary skill and care in accordance with his system, he is not answerable."

This was followed by the section assigned as error.

We think these sections of the charge, taken together as a whole, correctly state the law and that this assignment must therefore be overruled.

Defendant's seventh assignment of error complains of a portion of the judge's charge in which he explained to the jury the theory of the plaintiffs in this case. As this statement of the theory of the plaintiffs conforms to the pleadings and proof of plaintiffs, we hold that the judge was not in error.

However, had the theory not been correctly set out by the trial judge, the defendant cannot now complain for the reason that he did not object at the time and offered no special requests on the subject.

"Though a court affirmatively fails to set out the theory of a party correctly, this is not error unless it is called to the attention of the court by a special instruction correctly setting out the theory sought to have charged. Hosiery Co. v. Napper, 124 Tenn., 155." Montesi v. Patton, 10 Tenn. App., 455.

Defendant's eighth assignment complains of a portion of the judge's charge in which the judge states the theory of the defendant. Defendant states in his brief that his theory of the case as set out in this paragraph is true, so he has no ground for complaint. Hence this assignment of error must be overruled.

We are of the opinion that the portion of the judge's charge set out in defendant's assignment number nine, when taken in connection with the rest of the charge correctly states the law. We think the expression "that is, such as ordinary members of the profession have," means those of his own school have, as before explained to the jury.

It results that all the assignments of errors must be overruled and the judgments affirmed. A judgment for $750 and interest from February 27, 1931, in favor of B. L. Beech individually and against Dr. F. L. Hunter, and a judgment for $1000 and interest thereon from February 27, 1931, in favor of B. L. Beech, administrator of Mrs. Sallie Beech, deceased, and against Dr. F. L. Hunter, will be entered in this court. The cost of the cause including the cost of the appeal in both cases is adjudged against Dr. F. L. Hunter. Executions will issue accordingly.

Faw, P. J., and DeWitt, J., concur.