GLOVER v. BURKE.—133 S. W. (2d) 611.

Middle Section.  December 10, 1938.

Petition for Certiorari denied by Supreme Court, December 8, 1939.

E. R. Woolard and Louis Chambers, both of Lebanon, for plaintiff in error, Dr. Glover.

Jesse Cantrell, of Watertown, and T. B. Finley, of Lebanon, for defendant in error Nellie Burke.

CROWNOVER, J.  This is an action for damages for malpractice.  It was averred, in substance, in the declaration, that the defendant, Dr. Glover, was employed as a surgeon to remove a small growth known as a cyst or chalazion formed on the underside of plaintiff's eyelid, and to treat the same, and that he negligently removed the cyst and injured her eyeball, which was allowed to become infected, and while in this condition he negligently treated the eye and did not use ordinary skill and ability, with a result that the eyeball became inflamed and seriously affected and had to be removed.

The defendant pleaded not guilty.

The action was tried by the judge and a jury, and it returned a verdict for $450 for the plaintiff Nellie Burke, and against the defendant Dr. Glover, and judgment was entered accordingly.  The defendant's motion for a new trial was overruled, to which he excepted, appealed in error to this Court, and has assigned errors, which are, in substance, as follows:

1.  The court erred in not directing a verdict for the defendant, as there is no evidence to support a verdict for the plaintiff.

2.  The court erred in reading or quoting substantially verbatim the entire declaration to the jury in his charge, whereas he should have stated briefly the substance of the action, the result being that the court over-emphasized the averments of the declaration, some of which were not supported by the evidence, thereby confusing and misleading the jury to the defendant's prejudice.

3.  The court erred in charging the jury as follows:

"A physician where he has agreed to and entered upon the treatment of a case is not warranted in leaving the case and going away if the case is in a dangerous condition, without using due diligence

to furnish relief for the patient by some other person or to leave the patient in charge of some proper person to look after and care for the patient when he is at the time in an unfortunate, improper and serious condition. As to whether or not one is in that condition, of course, is a matter for your determination from all the facts of the case.''

The facts necessary to be stated are that the plaintiff Nellie Burke had a cyst on the underside of her upper eyelid, and she consulted defendant Dr. Glover, who told her that he was a surgeon and physician, and could remove the cyst by a slight operation, that it wouldn't cause her pain or affect her sight, and would be cured within a short time; thereupon, she employed him and he performed the operation, after sterilizing his instruments and his hands. He everted the eyelid, made an incision, and scraped out the tissue with a curette, and put some hydrogen peroxide and a five per cent argyrol solution on it, dressed and bandaged it, with instructions for her to go home, remain quiet and not to touch it or her eye, so that it would not become infected. She returned to his office every day for treatment for almost two weeks. The doctor had an engagement to attend a doctors' meeting in St. Louis, and made arrangements with another colored doctor in Lebanon to treat her in his absence, and instructed her to call on this colored doctor.

He says her eye was doing nicely and was not infected when he examined her last, but three or four days before he left he noticed a white circular ring in the iris around the outer portion, which gradually grew cloudy and continued cloudy.

On the day after the doctor left for St. Louis, the plaintiff called on the other colored doctor, who examined her eye and found the entire eyeball completely inflamed, and he refused to treat it, as he was not an eye specialist, and advised her to consult a specialist at once, and she consulted an eye specialist in Nashville who found her eyeball badly infected and it grew worse under treatment for a few days, and it became necessary to remove the ball. After which operation she recovered, with the loss of an eye, and instituted this action.

1. The first assignment of error, to the effect that there was no evidence to support the verdict and that the court erred in not directing a verdict for the defendant Dr. Glover, is not well made and must be overruled.

We think there is no evidence to sustain the contention that the doctor injured her eyeball in operating on her eyelid. Her eyeball may have become infected by her own fault in adjusting the bandages, or in rubbing her eye, or it may have resulted from an abscess caused by syphilis. There is no evidence as to the cause of the inflammation of the eyeball.

The defendant insists that she was treated for syphilis and gonor-

rhea in 1931 by Dr. Bacchus, and quit before she was cured, and this inflammation of the eye is a result of the arrested syphilis, but it appears that she had married a year or two before her eye infection, and that she has since had a baby. She was examined at the Vanderbilt Hospital when her eye was treated, and she was given the Wasserman test, which proved to be negative, hence the court would have been justified in directing a verdict on this proposition.

But the court would not have been warranted in directing a verdict on the proposition that the defendant showed ordinary skill and ability in treating her eye after he operated on her eyelid. The colored doctor at Lebanon says that her "entire eyeball was completely inflamed" when he saw it and he refused to treat her, and the specialist at Vanderbilt says practically the same thing. Both said they thought it had been in that condition several days. The defendant said he noticed a white ring about the iris several days before he turned her over to the other doctor, and it gradually became cloudy, and remained cloudy. He evidently didn't know or was negligent in not observing the infection when he assured her that her eye was doing nicely. At least it was a question for the jury to say whether he used the ordinary skill and learning possessed and exercised by members of his profession in good standing under similar circumstances.

The defendant is a licensed physician and says that he is a surgeon but only performs minor operations, but admits that he is not an eye specialist.

" 'In the absence of a special contract to do so, a physician or surgeon is not required to exercise extraordinary skill and care or the highest degree of skill and care possible, nor, if not a specialist, the skill and care of the specialist or expert, but is only required to possess and exercise the degree of skill and learning ordinarily possessed and exercised, under similar circumstances, by the members of his profession in good standing, and to use ordinary and reasonable care and diligence, and his best judgment, in the application of his skill to the case.' 48 C. J., 1113, sec. 101; Wood v. Clapp, 4 Sneed, 65; Alder v. Buckley, 1 Swan, 69; Young v. Dozier, 4 Tenn. App., [148], 151." Beech v. Hunter, 14 Tenn. App., 188, 192.

The duty of the physician or surgeon is to exercise that reasonable degree of learning, skill and experience ordinarily possessed by others of his profession under the same circumstances. Carr v. Shifflette, 65 App., D. C., 268, 82 F. (2d), 874.

Physicians and surgeons are required to have and exercise only reasonable learning and skill, measured by the rules of their profession. They are required to use only reasonable care and diligence in the use and application of such requisite learning and skill. Odeneal v. State, 128 Tenn., 60, 157 S. W., 419, 421.

2. The second assignment, that the court erred in quoting

almost the whole declaration in his charge to the jury, is not well made and must be overruled. It is true the trial judge stated the substance of the declaration at some length, but he expressed it in simple and plain language, without repetition or without unduly emphasizing the averments of negligence and want of ability. The court further stated to the jury that the defendant had pleaded not guilty, which he explained, and stated that the legal effect of the plea of not guilty was a denial of each and every material averment in plaintiff's declaration, and that before she was entitled to a recovery she must prove her declaration substantially as stated by a preponderance of all the evidence in the case; and he then proceeded to charge the rules of evidence applicable to the case; hence we think this charge did not prejudice the defendant.

Ordinarily, it is error for the trial judge to read the pleadings at length to the jury. Instructions should not be written in the language of the pleadings. The pleadings are addressed to the court. The court should state the issues briefly in plain simple language to the jury. Where the pleadings are long, prolix, intricate, and repetitious, they should not be read to the jury, as the defendant may be prejudiced thereby, and, where the court can see that one is liable to be prejudiced the judgment should be reversed. 64 C. J., 701-704; Nashville, C. & St. L. Railroad v. Anderson, 134 Tenn., 666, 681, 185 S. W., 677, L. R. A., 1918C, 1115, Ann. Cas. 1917D, 902.

But in this case we cannot see that the defendant was prejudiced as the language of the charge is plain and simple.

3. We think the paragraph of the charge complained of in the third assignment did not prejudice the defendant. If the plaintiff was in such a condition that she needed medical attention, it was the doctor's duty to provide such as was necessary before he left for St. Louis, and the evidence is not contradicted that he made such arrangements with another reputable colored doctor, who examined her eye and advised her to consult an eye specialist at once, which she did and received competent treatment, hence we cannot see that the defendant was in any way prejudiced. The jury was in no way misled or prejudiced thereby against the defendant. This assignment must be overruled, and the judgment of the lower court will be affirmed. A judgment will be entered in this court for $450 and interest from February 3, 1938, to the present, together with the costs that accrued in the lower court in favor of Nellie Burke and against Dr. John Glover. The costs of the appeal are adjudged against Dr. Glover and the surety on his appeal bond.

Faw, P. J., and Felts, J., concur.