June AKINS and James Akins

v.

George T. NOVINGER, M.D.

Civ. A. No. 6908.

United States District Court,
E. D. Tennessee, N. D.

Oct. 5, 1970.

Louis Hofferbert, Knoxville, Tenn., for plaintiffs.

McAfee, Lee, Key & Lee, Knoxville, Tenn., for defendant.

## ORDER

ROBERT L. TAYLOR, District Judge.

Plaintiff has filed a motion for a new trial and urged in support six separate grounds.

The first two grounds relate to the evidence. In the opinion of the Court the evidence created issues for the jury and there was substantial evidence to support the verdict of the jury.

■ It is the further opinion of the Court that it did not commit prejudicial error in its refusal to charge as re-

quested. Plaintiff's first request for instructions stated:

"Where there is expert opinion available [a] reasonably careful and prudent general practitioner should seek consultation with such expert or specialist."

Plaintiff contends that this charge is required by Osborne v. Frazor, 58 Tenn. App. 15, 425 S.W.2d 768 (1968). In *Osborne,* the Court pointed out that a general practitioner has a duty to advise a patient of the necessity to seek specialized treatment when the general * * * practitioner discovers, or should know or discover, that the patient's ailment is beyond his knowledge or technical skill, or ability or capacity to treat with a likelihood of reasonable success. * *" Osborne v. Frazor, supra, at 25, 425 S.W.2d at 773. Dr. Novinger testified that he was a graduate of McGill Medical School in Canada and that he had been engaged in general medical practice and surgery for a number of years. That two years of his medical training was in orthopedics. That he had seen 500 or more ankle fractures. He considered himself competent to treat plaintiff's ankle fracture. Dr. Tauxe, an orthopedist, a witness called by the plaintiff, testified that in his opinion the majority of general practitioners refer fractures to orthopedists, but some do not. Thus, the principle of law announced in the *Osborne* case was not applicable to the facts in the case under consideration because such proof that was introduced on the subject showed that Dr. Novinger was competent to treat ankle fractures. The *Osborne* decision does not require a charge that a general practitioner must call in a specialist for consultation until it is shown by the admission of the general practitioner or other evidence that the surgical procedure or treatment of the patient is beyond the capacity of the general practitioner. There was no such showing in our case.

The Court denied plaintiff's request No. 1 because it was not applicable and tended to invade the province of the jury. Moreover, the general charge dealt with the standard of care and skill required of physicians, a portion of which is quoted below:

" * * * From the viewpoint of public and patient, the law requires that a physician possess that reasonable degree of learning, skill and experience which ordinarily is possessed by others of his profession; that he must exercise reasonable and ordinary care and diligence in the use of his skill and the application of his knowledge, and that he use his best judgment as to the treatment of the case intrusted to him. Otherwise stated, a physician is bound to bestow such reasonable and ordinary care, skill and diligence as physicians and surgeons in the same neighborhood, in the same general line of practice, ordinarily have and exercise in like cases. More briefly stated, the physician is required to have the qualifications which doctors in general have in his neighborhood, and he is required to bestow upon his patient such reasonable care as doctors of the same neighborhood bestow upon their patients in like cases. Failure to have such qualifications, or failure to exercise such care, is a violation of the doctor's legal duty toward the patient against whom he has thus offended."

Plaintiff's second request was:

"Where the standard of practice in the community is established by competent witnesses, the failure of the defendant to observe this standard of care will make him liable to the plaintiff."

This instruction was covered in the general charge, was misleading and tended to invade the province of the jury. Furthermore, it failed to discuss proximate cause.

It is the further opinion of the Court that it did not commit prejudicial error in ruling on questions of evidence relating to defendant's qualifications or medical background. Plaintiff contends that the defendant testified of his qualifications at length on direct examination and that the trial court did not

allow inquiry into the defendant's current standing to practice in the local hospitals. We do not agree. If Dr. Novinger had been excluded from practice in any of the hospitals, this would have required proof on the reasons for such exclusion. Some doctors who have been excluded have given as a reason, "professional jealousy." This Court is not intimating that Dr. Novinger was excluded for that reason, if in fact he was excluded. The Court felt that to permit cross-examination on subjects not relevant to the controlling issue in the case, namely, whether defendant possessed adequate skill and exercised proper care in the use of such skill in the treatment of plaintiff, was improper. The record shows the following:

"BY MR. HOFFERBERT:

\* \* \* \* \* \*

"Q. You came here some 18 years ago from Canada to do general surgery in the Acuff Clinic; is that correct?

"A. That is right.

"Q. You indicated on your direction examination that back in May 1969 your practice had transformed into a mixture of general surgery and general practice; is that correct?

"A. Correct, right, yes.

"Q. Before that time, sometime before that time, was it essentially general surgery?

"A. I did quite a bit of general surgery; yes, sir.

"Q. And sometime since May of 1969 has it developed into an essentially general practice?

"A. Well, I have done a lot more general practice.

"Q. How does a doctor go from the field of surgery to the field of general practice, what is the mechanics?

"A. Well, this is a problem which has happened as far as I am concerned, as I have done general practice even when I was doing general surgery, in the office, done a great deal of general practice, and I have seen a lot more personal injury cases and that type in the office recently, and I have not done as much surgery.

There isn't—I expect it is due to —I guess you are driving at— yes, you can say that but that is it. And on top of that, and the jury is not to be, shall we say carried away under any false pretense, I have had certain problems in town that were personal things and I am doing more general practice. That is my answer.

"Q. Let me ask you this, Doctor.

"A. All right.

"Q. When you first came to Knoxville and engaged primarily in general surgery—

"A. Right.

"Q. —were you permitted to practice your profession of general surgery in all the hospitals in town?

"A. I knew you were going to ask that and I have been waiting for it. Yes, sir, every hospital in town. No question about that at all.

"MR. Lee: Your, Honor, I think this examination is getting far afield, and really I think the test is what was Dr. Novinger doing on May 1, 1969.

"THE COURT: So does the Court. You are making a lecture. Are you objecting?

"MR. LEE: I object to it.

"THE COURT: It is sustained."

While the Court attempts to rule liberally on questions of evidence during cross-examination, certain limits of relevancy and materiality must be observed. At the time of this ruling, the Court perceived that counsel was going far afield from the alleged negligence of defendant's initial and follow-up treat-

ment of plaintiff. Counsel did not explain why this evidence was relevant or offer to show what subsequent cross-examination would have revealed. See Colonial Refrigerated Transportation, Inc. v. Mitchell, 403 F.2d 541, 551–552 (C.A. 5, 1968); Baker v. Sherwood Construction Co., 409 F.2d 194 (C.A. 10, 1969).

■ Plaintiff contends that the following observation made by the Court during the direct examination of Dr. Bishop was error in that it did not properly state the law of Tennessee applicable to the standard of care of a general practitioner in Tennessee calling in specialists for specialized diagnosis and treatment. We do not agree. The law only exacts from the general practitioner that if he discovers that his patient's ailment is beyond "his knowledge or technical skill, or ability or capacity to treat with a likelihood of reasonable success," he is under a duty to disclose the situation to his patient "or advise him of the necessity of other or different treatment." Osborne v. Frazor, 425 S.W.2d 768, 773. See Beech v. Hunter, 14 Tenn.App. 188. The statement complained of is as follows:

"THE COURT: Members of the Jury, the Court tells you at this time if a general practitioner is familiar with the bones of the ankle, of the human body, and knows how to treat them, he does not have to be a bone man, a bone man, the kind that Dr. Tauxe is, because, of course, this is a day of specialists but that does not deprive a general practitioner of treating people of any kind of disease that he thinks he is capable of treating that person for, and that does not deprive these general practitioners from going into the home and treating broken bones even though they are not a bone specialist, and just keep that in mind.

"We haven't come to the day in this country where you have to be a specialist before you can go in and administer to a suffering patient.

"If the doctor here who is on trial was capable of treating this person of the bone injury he did not have to call in a specialist to do it, if he is capable of doing it himself. But I don't want you to be mislead on that point. What the Court has said is not intended to prejudice the plaintiff's position in any respect.

"She claims that the doctor did not look after her, that he did not treat her properly, that she also claims that he should have called in a bone specialist.

"That is for the jury to decide, but if the doctor was capable of the treatment he did not have to call in any bone specialist in order to relieve himself of liability in this case. That is the point that the Court is trying to make.

"It is now awfully difficult to get these doctors in our homes like we used to but we all have to go to the hospital apparently, and in the opinion of the Court there is too much of that and we can't help that. We are not trying that now. I wish we could get these doctors back in our home one more time. I think we would get along much better."

\*　　\*　　\*　　\*　　\*　　\*

The foregoing was made after one or more of the doctors had intimated that a general practitioner of medicine was required to consult a specialist on ankle fractures. Admittedly, this statement could have been omitted without loss to the law. In the opinion of the Court it did not state the law of Tennessee incorrectly.

The Court is further of the opinion that there was no prejudicial error in admitting the testimony of witnesses Gooch and Collins.

It is, therefore, ORDERED that the motion for a new trial, and each ground in support thereof be, and same hereby is, denied.