Kay McDANIEL, Plaintiff,

v.

BAPTIST MEMORIAL HOSPITAL, Defendant.

Civ. A. No. C–70–439.

United States District Court,
W. D. Tennessee, W. D.

Nov. 17, 1971.

Supplemental Opinion Jan. 27, 1972.

Hal Gerber, Memphis, Tenn., for plaintiff.

Gavin M. Gentry, Memphis, Tenn., for defendant.

## ORDER GRANTING MOTION TO DIS-MISS BUT PEMITTING PLAIN-TIFF TO AMEND

WELLFORD, District Judge.

This is a suit filed by an Arkansas resident, a widow, against the Baptist Memorial Hospital in Memphis (herein-after referred to as "the Hospital") growing out of the alleged wrongful death of her husband by reason of ser-um hepatitis contracted after blood transfusion administered from the Hos-pital blood bank in late 1969. Plaintiff sued at the outset on the theory of viola-tion of the Hospital's strict duty not to transfuse defective or impure blood, con-tending that the Hospital did, in fact, obtain, supply, sell and transfuse blood containing deleterious contaminants, (therefore in an unreasonably dangerous condition) bringing about her husband's death as a patient from transmitted hep-atitis. Plaintiff's essential theory, as stated, was based on strict liability in tort. Defendant filed a Motion to Dis-miss because, it contended, the complaint failed to state an actionable claim.

This is a case of first import in Tennessee, but many other courts have wrestled with this controversial issue in recent years. California in 1955, passed a law designed to protect hospitals (and others) from strict liability in connec-tion with blood transfusions, and a num-ber of other states have since followed this precedent, Tennessee doing so in 1967 by enactment of T.C.A. § 47–2–316, the applicable portion of which states:

"47–2–316. Exclusion or modification of warranties.—(1) * * *

(5) The implied warranties of mer-chantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues (such as cor-neas, bones, or organs), whole blood, plasma, blood products, or blood deriv-atives. Such human tissues, whole blood, plasma, blood products, or blood derivatives shall not be considered commodities subject to sale or barter, and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service."

While couched in language pertaining to warranties in the section dealing with the Uniform Commercial Code applicable to Tennessee, the legislature did, in our view, intend to exempt entities such as the defendant Hospital from strict lia-bility in regard to transfusion of blood, blood products, plasma and other human tissues. Plaintiff here asserts strict lia-bility *in tort*, apparently conceding that the statute precludes her as to warranty under contract, but further taking the position that the Tennessee Statute con-stitutionally violates Article I, Section 8, of the Tennessee Constitution and the 14th Amendment to the Constitution of the United States in denying equal pro-tection of the laws and in violating due process.

Plaintiff relies primarily on Section 402(a) of the Restatement of Torts and on the recent Illinois Supreme Court de-cision, Cunningham v. MacNeal Memori-al Hospital, 113 Ill.App.2d 74, 251 N.E. 2d 733 (1969), affirmed on rehearing, 47 Ill.2d 443, 266 N.E.2d 897 (1970). Plaintiff also cites Olney v. Bearman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430 (Tennessee Supreme Court, 1967) wherein the Court commented upon im-plications of the Restatement on Torts, § 402(a), but this was clearly dictum in Special Judge Harbison's opinion.

Defendant contends that by labeling this cause of action one of strict liability in tort, plaintiff is attempting to cir-cumvent the apparent legislative intent in enacting this provision. Defendant adds that "if the same facts constituting the cause of action would be barred by the Tennessee Statute (T.C.A. 47–2–316) when labelled strict liability for breach of warranty, the statute should bar a recovery when the facts are la-belled strict liability in tort."

A secondary ground on which defend-ant bases its motion to dismiss is that Tennessee's Wrongful Death Statute

(Tennessee Code Annotated § 20–607) allows recovery only for negligent or willful actions and not for liability without fault.

## I. Liability of Hospital for Transmission of Hepatitis Through Blood Transfusion

This cause of action is one in a series of actions precipitated by the expanded use of blood transfusions since World War II. Paradoxically, in recent years where the buyer of goods has been increasingly protected by the expanding field of products liability, the plaintiff in cases asserting injuries from blood transfusions has found little recourse in the courts.

The problem of detection and prevention of the hepatitis virus is the basis for many of the legal problems occurring in the cases. Ordinarily, in products liability cases, the manufacturer or distributor is in a better position to detect and prevent harmful features in the product than is the consumer. The lack of an easy and reliable method of determining the virus in the blood of a potential donor presents a difficult problem for hospitals and blood banks in their ever more frequent attempt to place the blood into the stream of commerce in a safe condition. Virtually all of the decisions we have read have been rendered prior to the advent of the strict tort liability doctrine or have been decided under other theories. A brief look at these other grounds might be helpful.

## II. Res Ipsa Loquitur

The three elements essential to an action based on this doctrine are (1) the thing or instrumentality causing the injury must be within the exclusive control of the defendant; (2) the happening must be of such a nature as ordinarily does not occur in the absence or without the occurrence of negligence; (3) the happening must not have been due to the fault or contributory negligence of claimant. See generally, Chandler v. Anchor Serum Co., 198 Kan. 571, 426 P.2d 82 (1967); Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721 (1942); and McBride v. Proctor & Gamble Mfg. Co., 300 F.Supp. 1150 (E.D.Tenn., 1969). This doctrine has been applied to cases involving blood transfusions. Sherman v. Hartman, 137 Cal.App.2d 589, 290 P.2d 894 (1955). It does not, however, appear that it has been held applicable to donor-transmitted serum hepatitis which is involved in the instant case, due to the nature of the doctrine itself, which, in and of itself, cannot create liability. It has been applied to medical malpractice where an ordinary layman can make or infer from his own knowledge or experience that harm would result but for the negligence of the defendant. The presence of hepatitis in blood is not an occurrence on which nonmedical layman is competent to pass judgment. See Toy v. Rickert, 53 N.J.Super. 27, 146 A.2d 510 (App. Div., 1958).

## III. Warranty

Most of the cases in this area have been brought under some theory of breach of implied warranty. Warranty by nature is a combination of tort and contract principles which have become so intertwined as sometimes to be indistinguishable—a hybrid or mixture of both contract and tort.

In cases involving serum hepatitis litigation, the Courts seem to have adopted a policy directed toward the protection of those placing blood into commerce. This has often been accomplished by emphasizing the contractual aspects of warranty and bringing about a restriction of liability. The restricted liability imposed on hospitals under warranty has been based on two technical distinctions under the Uniform Commercial Code or the Uniform Sales Act: (1) blood is neither a product nor goods; (2) the transaction is a service, not a sale. See e. g. Sloneker v. St. Joseph's Hospital, 233 F.Supp. 105 (D.Colo., 1964); Koenig v. Milwaukee Blood Center, Inc., 23 Wis.2d 324, 127 N.W.2d 50 (1964); White v. Sarasota County Public Hospital Board, 206 So.2d 19 (Fla.App.,

1968), cert. denied, Fla., 211 So.2d 215; see also, Uniform Commercial Code, § 2–105(1) and 2–106(1), and Chiles v. Sisters of Charity (D.C.Calif., #C–2740, 2–4–71). The leading decision was Perlmutter v. Beth David Hospital, 308 N.Y. 100, 123 N.E.2d 792 (1954), in which it was held that the plaintiff failed to state a cause of action for breach of implied warranty against a hospital for transfusing into plaintiff blood containing hepatitis viruses. The court reasoned that the warranty would arise only when there was a contract for sale. By viewing the contract between the hospital and the patient as a whole, they found it was an agreement for care and treatment, with the sale of blood as merely incidental. This has also been the basis of several more recent decisions: Whitehurst v. American Nat'l Red Cross, 1 Ariz.App. 326, 402 P.2d 584 (Ct.App., 1965); Lovett v. Emory Univ., Inc., 116 Ga.App. 277, 156 S.E.2d 923 (1967); Balkowitsch v. Minneapolis War Mem. Blood Bank, Inc., 270 Minn. 151, 132 N.W.2d 805 (1965).

We are aware of only two cases in which the transaction between a hospital and patient has been recognized as a sale. Cunningham v. MacNeal Memorial Hospital, supra, and Jackson v. Muhlenberg Hosp., 96 N.J.Super. 314, 232 A.2d 879 (1967) aff'd 53 N.J. 138, 249 A.2d 65 (1969). All other cases considering the question have found a service relationship and courts have accordingly summarily granted motions to dismiss by the hospital invoking the *Perlmutter* rule.

The recent case of Hoffman v. Misericordia Hosp. of Phila., 439 Pa. 501, 267 A.2d 867 (1970) should also be noted in this connection. The administrator of deceased's estate brought an implied warranty action against the hospital seeking damages for death due allegedly to transmitting hepatitis by blood transfusion. The lower court sustained a demurrer to the complaint on the basis of *Perlmutter,* supra. The Supreme Court of Pennsylvania in overruling, noted that *Perlmutter* failed to consider the possibility that warranties may be implied in non-sales transactions, noting frequency of implied warranties in non-sales transactions in Pennsylvania, and stated:

"It seems to us a distortion to take what is, at least arguably, a sale, twist it into the shape of a service, and then employ this transformed material in erecting the framework of a major policy decision". (439 Pa. at 507, 267 A.2d at 870)

The Pennsylvania court held that it could not preclude the possibility of recovery on a warranty theory, but it cautioned: "[W]e do not decide that the extent of the warranties implied at common law in non-sales situations need necessarily be the same as those given statutory sanction in sales transactions under the Uniform Commercial Code. . . . " It appears that in at least one decision then, the sale-service reasoning has been at least partially ignored in an implied warranty situation.

It must be observed that Pennsylvania does not have a statute such as T.C.A. § 47–2–316.

### IV. *Restatement § 402A*

The technical distinction between sales and service should be immaterial to warranty actions based on strict tort liability argues Restatement (Second) of Torts § 402A (comment m):

"m. *'Warranty.'* The liability stated in this Section does not rest upon negligence. It is strict liability, similar in its nature to that covered by Chapters 20 and 21. *The basis of liability is purely one of tort.*

A number of courts, seeking a theoretical basis for the liability, have resorted to a 'warranty' either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances this theory has proved to be an unfortunate one. Although warranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will

still lie for its breach, it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of 'warranty' to the user or consumer. But if this is done, it should be recognized and understood that the 'warranty' is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.

The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer does not even know who he is at the time of consumption. *The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties*; and it is not affected by limitations on the scope and content of warranties, or by limitation to 'buyer' and 'seller' in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, 'warranty' must be given a new and different meaning if it is used in connection with this Section. *It is much simpler to regard the liability here stated as merely one of strict liability in tort."* (Emphasis supplied.)

Even when recognizing that the nature of the transaction in which the blood is transferred as not determinative of the liability of a hospital (see e. g., Jackson v. Muhlenberg, supra), the courts also recognized these transactions as involving a class of highly useful products which are termed "unavoidably unsafe". Restatement (Second) of Torts, 402A, comment k states:

"There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of any other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he

has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

By finding that a hospital is unable reasonably to discover or prevent the presence of the virus, and thus placing infected blood in the class of products termed "unavoidably unsafe" under a theory of the Restatement, the courts may have misconstrued the true nature · of strict tort liability.

The situations contemplated by the Restatement would seem to be those where an unknown and undetected substance is present in a product, but only when it is common or indigenous to it.

If strict tort liability has any meaning, it must be that liability is imposed without "fault". If ordinary negligence were required or if the supplier be unqualifiedly able to prevent the defect, then the question of ordinary negligence would be involved, and strict tort liability would not be superimposed.

The fact that a state has permitted recovery on a warranty theory without proof of negligence does not necessarily mean that it would permit recovery on a strict liability theory in tort. Christensen v. Osakis Silo Co., 424 F.2d 1301 (CA 8, 1970).

Plaintiff has also filed a motion in the cause to be permitted to amend to assert liability against the Hospital for negligence under the circumstances of the transfusion of blood assertedly leading to the wrongful death. Defendant opposes the amendment by reason of the limitations of actions.

The problem presented in the motion to dismiss under the allegations of this cause of action make this decision a difficult one. We have indicated that the language of the Tennessee Statute relied upon by the Hospital makes it evident that the legislative intent was to free the Hospital from liability by reason of any breach or failure of warranty. It follows that whether the breach sounds in contract or in tort, the motion of the Hospital should be permitted if the statute is constitutional.

■ The burden is, of course, upon the plaintiff here who challenges the Tennessee Statute because it assertedly offends due process and equal protection provisions. The fact that the important service of blood transfusions has been singled out for legislative treatment, and immunity to some degree is bestowed, does not, in and of itself, make it unlawful or unconstitutional. Estrin v. Moss, 221 Tenn. 657, 430 S.W.2d 345 (1968). The question is whether the classification is so arbitrary and capricious as to constitute a denial of equal protection. City of Chattanooga v. Harris, 442 S.W. 2d 602 (Tenn., 1969). Legislative acts are entitled to great weight and courts "favor the constitutionality of statutes". 16 C.J.S. Const. Law § 98a. See Dykes v. Hamilton County, 183 Tenn. 71, 191 S.W.2d 155 (1945); Holly v. Elizabethton, 193 Tenn. 46, 241 S.W.2d 1001 (1950); Smithson v. State of Tennessee, 222 Tenn. 499, 438 S.W.2d 61 (1968). See also Donahoo v. Mason & Dixon Lines, 199 Tenn. 145, 285 S.W.2d 125 (1955).

■ The law in question involves all within the class of selling or distributing blood or plasma equally and treats this activity as a medical service. There appears to be no discrimination in the law favoring the Hospital per se, because it is a hospital rendering important services. We will, therefore, recognize the provisions of T.C.A. § 47–2–316 in question as being a constitutional exercise of authority for the public welfare by the Tennessee legislature.

■ We are mindful of the ramifications of Merck & Co. v. Kidd, 242 F.2d 592 (CA 6, 1957) and the difficulties involved as to whether negligence can be shown or proven in this type of case. Without deciding the issue raised in defendant's memorandum, the defense of the statute of limitations, we are disposed to grant plaintiff's motion to amend, but, for the reasons stated, to

grant defendant's motion to dismiss as to the original, unamended complaint.

## SUPPLEMENTAL OPINION

By memorandum order dated November 17, 1971, the Court dismissed plaintiff's action to the extent it was predicated on strict liability in tort; however, the Court granted plaintiff's motion to amend her complaint to assert ground of negligence.

On December 27, 1971, plaintiff filed a motion for a discretionary appeal of the order dismissing the original complaint as it related to strict liability in tort. Defendant then objected to this motion on the grounds that (1) the November 17, 1971, order is now final since plaintiff has not filed an amended complaint; and (2) even if the Court were to find that its previous order is not final, the ultimate determination of the litigation would not be materially advanced if an immediate appeal were taken.

28 U.S.C. § 1292(b) provides: when a district court in a civil action makes an order which otherwise would not be appealable, the Court, if he is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," he shall so state in writing in his order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order. 28 U.S.C. § 1292(b); 3 Barron and Holtzoff, Federal Practice and Procedure, § 1193, p. 12 (1970 Pocket Supplement).

▪ It was the intention of the Court to render an interlocutory decree and not a final order of dismissal of plaintiff's cause of action. Accordingly, the above standards must be applied to the substantive issues of this case to determine whether an interlocutory appeal should be granted. Clearly, there is substantial ground for difference of opinion in regard to the question of imposing strict liability upon a defendant who allegedly furnishes contaminated blood to a person. Furthermore, this question appears to be a controlling issue in the case. However, the Court does not feel that an immediate appeal from its order would materially advance the ultimate termination of this litigation. Control Data Corp. v. International Business Machines Corp., 421 F.2d 323 (8th Cir., 1970); Pfizer & Co. v. Laboratori Pro-Ter Prodotti Therapeutici S.p.A., 278 F.Supp. 148 (D.C.N.Y. 1967). Furthermore, "federal law expresses the policy against piecemeal appeals". Switzerland Cheese Assn., Inc. v. E. Horne's Market, 385 U.S. 23, 87 S. Ct. 193, 17 L.Ed.2d 23 (1966); Sonobond Corp. v. Uthe Technology, Inc., 314 F.Supp. 878 (D.C.Cal.1970). "Justice is better served if the entire controversy and all of its questions can be determined in the District Court prior to the appeal." Rippey v. Denver United States National Bank, 260 F.Supp. 704, 717 (10 Cir., 1966). Accordingly, this action shall commence to trial upon plaintiff's filing of an amended complaint and defendant's answer thereto.

In the event that plaintiff chooses, however, not to file an amended complaint, the Court's previous Order of Dismissal will become final and plaintiff may pursue her appellate remedies as a matter of right without further ruling of this court. The Court will set February 18, 1972, as a time in which to file the amended complaint if plaintiff desires to pursue her allegations of negligence.