**Lois SAWYER and David Sawyer, Plaintiffs,**

v.

**METHODIST HOSPITAL OF MEMPHIS et al., Defendants.**

**No. C-73-163.**

United States District Court, W. D. Tennessee, W. D.

Sept. 10, 1974.

Andrew H. Avedisian, Avedisian & Avedisian, Paducah, Ky., for plaintiffs.

Frierson M. Graves, Jr. and E. Brady Bartusch, Memphis, Tenn., for City of Memphis Hospitals, John Gaston Hospital Blood Bank.

Gavin M. Gentry, Memphis, Tenn., for Methodist Hospital.

Albert T. McRae, Memphis, Tenn., for Battle Malone, II, M.D.

Leo Bearman, Jr., Memphis, Tenn., for Duckworth Pathology Group, Inc.

## ORDER

WELLFORD, District Judge.

Plaintiff Lois Sawyer and her husband, Kentucky residents, have sued defendants Methodist Hospital, Dr. Battle Malone, a Memphis surgeon, and Duckworth Pathology Group, Inc., a medical group composed of pathologists practicing in the Methodist Hospital at Memphis for damages claiming that defendants' actions, negligent and/or wrongful, caused her to contract serum hepatitis while being operated on and treated for a hernia and gall bladder condition. The claim was at the outset based on strict liability in tort, breach of warranty, express or implied, and negligence because it was claimed that Mrs. Sawyer became infected with hepatitis. She received two blood transfusions that were administered to her on orders of her surgeon, Malone, under the general supervision of the Duckworth Pathology Group, from a supply of blood furnished by the hospital in which she received surgery.

For the reasons stated in previous orders,[1] the causes of action based on strict liability and warranty were dismissed against all defendants. All claims were dismissed against the defendant City of Memphis Hospitals [2] because of governmental immunity under Tennessee law.

After plaintiffs' proof, in a trial before a jury, defendants moved for directed verdicts. For the reasons stated in its oral findings and conclusions, the Court found that plaintiff failed to present any competent or credible proof to establish negligence on the part of any defendants, in connection with then known and accepted testing procedures, regarding administration of the blood transfused to plaintiff Sawyer, which allegedly caused her condition subsequently [3] diagnosed as hepatitis. Previous medical and clinical tests in Memphis and Paducah had not indicated a liver malfunction or disorder associated with this disease. Plaintiffs' proof established that other tests, or shots, not administered by any defendant within a thirty to ninety day period in which hepatitis develops, could conceivably have caused the condition to develop. The evidence also demonstrated that at the time in question, early May, 1972, the best known and administered tests could detect hepatitis infection or virus in blood only in 20% of cases. None was detected in the blood transfused to plaintiff.

Dr. Malone ordered the blood transfusions while his patient was in the recovery room in an unconscious or semi-conscious state having lost an unanticipated large amount of blood during the operation. Her blood pressure and other indications persuaded him of the necessity for an immediate transfusion. No prior specific consent for the transfusions which followed was obtained by Dr. Malone from plaintiffs, though his usual practice, if transfusions were anticipated, was to discuss this with the patient or family so as not to cause undue alarm and concern. The hospital, upon admission, obtained permission from plaintiffs for the operation "and for such treatment deemed best upon the patient." Defendant pathologists caused a label to be affixed to the sealed blood containers that "no laboratory test is available to determine the presence of the virus of hepatitis. The risk of transmitting hepatitis is present." The only proof and evidence of the incidence of hepatitis at the Methodist Hospital [4] was to the effect that approximately eight possible or suspected cases had occurred out of about 60,000 blood units administered in a five or six year period preceding the transfusions in question.

■ Should the issue of a duty to warn be submitted to the jury under these circumstances? There was no testimony whatever presented on the question of a prevailing local or community custom or standard as of May 3, 1972, among the medical profession or surgeons in the Memphis area except the testimony of defendants that doctors here did not warn blood transfusion patients of possible hepatitis contagion. The only evidence on the question presented by plaintiffs was that Dr. Blaylock, Mrs. Sawyer's doctor, testified that after[5] the episode in question, he consulted with his patients in Paducah about the possible risk. Nothing about any community standard or custom

1. Orders of November 20, 1973, and July 10, 1974, respectively.

2. Order of November 14, 1973.

3. Approximately six weeks after the operation, her Paducah, Kentucky physician made this diagnosis for the first time.

4. There was no other proof presented as to the incidence rate of hepatitis in blood transfusions in the Memphis area or elsewhere.

5. He testified for the past year before his deposition taken in the late summer of 1973, he had followed this procedure. Dr. Blaylock, however, did not testify that he had ever practiced in Tennessee or that he was familiar with standards or custom of physicians in Tennessee on the subject, or that Paducah was in any way similar to Memphis in this respect.

among physicians in Paducah or even in Kentucky was adduced. Nothing whatever was indicated to show that Dr. Malone or any of the defendants knew for any period of time in advance that the first of the transfusions would be required. The Duckworth group and the hospital strongly maintain that in any event they had no direct contact with the patient or her husband and could not intervene in the doctor-patient relationship of Malone and Sawyer. To impose a further duty to warn against the pathologist or the hospital under these circumstances seems unwarranted, and negligence is not indicated on the part of either vis-a-vis plaintiffs in this regard.

The risk of incidence of hepatitis shown was remote and inconsequential —.00013 or .013%! It seems highly doubtful or unreasonable to expect that plaintiffs, had warning been given to them under the circumstances of the indicated need of prompt transfusion of blood, would have declined the blood. No further testing of the blood by the Methodist Hospital or the Duckworth Pathology Group would have indicated anything but that the blood in question was negative as to demonstrable evidence of hepatitis.

Plaintiffs rely strongly on the case of Canterbury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772 (1972). That case, however, recognized that "[t]he majority of courts dealing with the problem [of warning or disclosure] have made the duty depend on whether it was the custom of physicians practicing in the community to make the particular disclosure to the patient." 464 F.2d at 783. After citing cases from several jurisdictions, it noted that "majority-rule courts hold that expert testimony is necessary to establish the custom." *Id.* at n. 38. That Court, furthermore, was unwilling to adopt any "full" disclosure standard in a case involving substantially higher risks inherent in a particular kind of op-

eration, stating "[i]t seems obviously prohibitive and unrealistic to expect physicians to discuss with their patients every risk of proposed treatment—no matter how small or remote—and generally unnecessary from the patient's viewpoint as well." 464 F.2d at 786 (footnote omitted). It reiterated that most courts based a duty to disclose upon "prevailing fashion within the medical profession" or "by good medical practice" or by "what medical custom in the community would demand." *Id.* That case, moreover, recognized exceptions to a limited duty to disclose or warn where the risk information would present a threat to the patient's well-being or "for therapeutic reasons." [6] Mrs. Sawyer had known emotional problems before this operation was recommended by her own physician, she needed a blood transfusion or transfusions after her operation promptly. Even under the *Canterbury v. Spence* rationale, it is believed that defendant's conduct was reasonable and free of negligence.

Tennessee, on the other hand, has long recognized that a physician's duty and the standard whereby his alleged negligence must be judged is based upon " 'the degree of skill and learning ordinarily possessed and exercised, under similar circumstances, by the members of his profession' " in his community. Beech v. Hunter, 14 Tenn.App. 188, 192 (1931), cert. denied (Tenn.Sup.Ct. 1932) citing Young v. Dozier, 4 Tenn. App. 148, 151 (1926), among others. See Ball v. Mallinkrodt Chemical Works, et al., 53 Tenn.App. 218, 381 S.W.2d 563 (1964) cert. denied (Tenn.Sup.Ct.1964). The latter case approved the principle that it is a surgeon's duty to disclose "[w]here the consequences are serious and *substantially certain to occur*" 53 Tenn.App. at 227, 381 S.W.2d at 567, (emphasis ours) and recognized also that disclosure "may well result in alarming a patient who is already un-

6. 464 F.2d at 789. Also, the exception to any duty of limited disclosure applies if the patient were "unconscious or otherwise inca-

pable . . . and harm from failure to treat is imminent." 464 F.2d at 788.

duly apprehensive and who may, as a result, refuse to undertake the surgery [where] there is, in fact, minimal risk." 53 Tenn.App. at 227, 381 S.W.2d 563 at 567. Mrs. Sawyer had experienced emotional problems and may well have been in the latter category had she been informed of the very slight risk involved in the transfusions. Campbell v. Oliva, 424 F.2d 1244, 1249 (6th Cir. 1970) recognized the rule in Tennessee that "the standard required . . . was that [one] possess [and exercise] the degree of skill and ability ordinarily possessed [and exercised] by [those] engaged in the practice of medicine and surgery in the same locality." citing Haskins v. Howard, 159 Tenn. 86, 95, 16 S.W.2d 20, 23 (1929).

An earlier District of Columbia Court of Appeals case had stated the rationale for the Tennessee rule:

"Thus it is that expert testimony is usually essential in medical malpractice cases. With lay jurors unlearned and inexperienced in matters of medical science and technique, there must, when the special tests are to be applied, be explanation in order that they may intelligently determine what the criterion is and whether the defendant's conduct meets it." Washington Hospital Center v. Butler, 127 U.S.App.D.C. 379, 384 F.2d 331, 335 (1967).

That same case held that a hospital's duty is "measured by the degree of care, skill and diligence customarily exercised by hospitals generally in the community." [7] See also Stottlemire v. Cawood and Parke Davis Co., 213 F. Supp. 897 (D.D.C.1963) ; 79 Yale L.J. 1555–76 (1970).

The plaintiffs have failed to establish negligence or failure on the part of any defendant in respect to its, his, or their duty to plaintiffs.

No proximate cause was established except by way of speculation to connect the particular transfusion with Mrs. Sawyer's condition discovered six weeks after the operation and treatment in question.

Defendants' motions for directed verdicts are therefore granted. The case is dismissed at plaintiffs' costs.

## APPENDIX A

## ORDER ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Plaintiffs brought this action for damages against Methodist Hospital of Memphis, Battle Malone, II, and Duckworth Pathology Group, Inc.[1] It was charged in the complaint that the defendants are liable to plaintiffs in negligence, strict liability and breach of warranty for damages resulting from plaintiff's contraction of serum hepatitis from the blood supplied to her while she was a patient.

Defendant Duckworth Pathology Group (hereinafter referred to as Duckworth) has moved for summary judgment on the negligence theory because it is asserted that Duckworth did not test the blood for hepatitis nor was it obligated to do so, and because Duckworth owed no duty to warn the patient. On the warranty theory Duckworth contends that blood is a service, not subject to warranty provisions of Tennessee's Commercial Code nor subject to strict liability in tort because Duckworth was not a seller or manufacturer of the blood in question.

Although not all of the defendants have raised the issue, the Court on its own motion will consider whether plaintiffs have stated a cause of action based upon theories of strict liability or in warranty. This Court has previously rendered a decision, affirmed on appeal, which is directly in point. McDaniel v. Baptist Memorial Hospital, 352 F.Supp. 690 (W.D.Tenn.) aff'd 469 F.2d 230 (6th Cir. 1972). There the

---

7. 384 F.2d at 335, footnote 10. Another footnote on the same page recognizes a similar standard for radiologists.

1. It has been dismissed as to original defendants, City of Memphis Hospitals and John Gaston Blood Bank on the basis of governmental immunity.

plaintiff sued the hospital only for strict liability in tort for damages in contracting serum hepatitis as a result of a blood transfusion. Both claims in strict liability and in breach of warranty are grounded in the concept of a sale of a product. 469 F.2d at 232–235.[2] In Tennessee, however, contracts for the purpose of supplying blood for transfusions are not considered sales to satisfy the requirements of the implied warranties of merchantability and fitness. Tenn. Code Ann. § 47–2–316(5) (Supp.1973). This statute also applies to strict liability claims as well as warranty claims.[3] Plaintiffs' causes of action sounding in warranty and strict liability as to defendants Duckworth and Methodist Hospital are accordingly dismissed. Duckworth's motion for summary judgment on the negligence claim including the "duty to warn" allegation is, however, denied.

The Court does not hereby dismiss any claim which plaintiffs may assert with respect to any alleged contractual duty (except on the basis of warranty) owed them by defendants, Methodist Hospital and/or Duckworth.

This 20th day of November, 1973.

(s) Harry W. Wellford

UNITED STATES DISTRICT
COURT JUDGE

APPENDIX B

ORDER

■ For the reasons set forth in the Court's Order in this cause dated November 20, 1973, plaintiffs' cause of action against the defendant Battle Malone, II, based on strict liability and/or breach of warranty are hereby dismissed and judgment is entered in favor of the said defendant Battle Malone, II, on said

causes of action. This judgment is without prejudice to any proper allegations based upon alleged negligence of the defendant in this cause.

This 10th day of July, 1974.

(s) Harry W. Wellford

UNITED STATES DISTRICT
COURT JUDGE

APPENDIX C

ORDER

Plaintiffs have sued in this cause asserting damages against a number of defendants, including City of Memphis Hospitals and the John Gaston Hospital in its capacity as a blood bank furnishing blood. Plaintiff claims that the blood furnished her brought about a condition of serum hepatitis for which she claims damages.

The defendant City of Memphis Hospitals has moved to dismiss and the Court has considered the memoranda of the respective counsel and the argument of counsel with respect to the motion to dismiss.

■ The defendant is owned and operated by the City of Memphis and claims governmental immunity. It has been held repeatedly in the State of Tennessee that the conduct of a hospital and the conducting of services related thereto by a municipality or by another governmental unit is in the exercise of a governmental function and is therefore immune from liability except and to the extent that it may carry liability insurance for the benefit of its patients or patrons. Webb v. Blount Memorial Hospital, 303 F.2d 437 (6th Cir. 1962); Lane v. City of Knoxville, 170 Tenn. 482, 96 S.W.2d 769 (1936); McMahon v. Baroness Erlanger Hospital, 43 Tenn. App. 128, 306 S.W.2d 41 (1957).

---

2. There has been, however, some limited recognition of the existence of an implied warranty in non-sale transactions. *See* Newmark v. Gimbel's, Inc., 102 N.J.Super. 279, 246 A.2d 11 (1968). Farnsworth, Implied Warranties of Quality in Non-Sales Cases, 57 Colum.L.Rev. 653 (1957); Note, A New

Principle of Products Liability in Service Transactions, 30 U.Pitt.L.Rev. 508 (1969).

3. McDaniel v. Baptist Memorial Hospital, 352 F.Supp. 690 (W.D.Tenn.1972). *See also* St. Martin v. Doty, 493 S.W.2d 95 (Tenn. App.1973).

With respect to the claims of the plaintiff with regard to strict liability, express or implied warranty, this Court has further held that Tenn.Code Ann. § 47–2–316(5) (Supp.1973) makes a hospital immune for the sale of blood used in the course of a blood transfusion. McDaniel v. Baptist Memorial Hospital, 469 F.2d 230 (6th Cir. 1972).

It further appears by affidavit filed on behalf of the said defendant City of Memphis Hospitals that at the time of the injury complained about the said hospital carried no liability insurance or other insurance for the benefit of the plaintiffs.

It therefore appears that the defendant's motion to dismiss is well taken and should be granted. Plaintiffs' cause of action is accordingly dismissed against the City of Memphis Hospitals and John Gaston Hospital Blood Bank at the cost of the plaintiffs.

This 14th day of November, 1973.

(s) Harry W. Wellford

UNITED STATES DISTRICT
COURT JUDGE